UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
LINDA NICHOLSON, MARIA MIRANDA,            :
SILVIA SANCHEZ, and JORGE PALAPA,          :
                                            :
                        Plaintiffs,        :
                                            :   09 Civ. 1984 (HB)
        - against -                         :
                                            :   OPINION &
                                            :   ORDER
TWELFTH STREET CORP., d/b/a VILLAGE DEN    :
RESTAURANT and KONSTANTINOS ("GUS")        :
DANALIS,                                    :
                                            :
                        Defendants.        :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., U.S.D.J.:**

  Plaintiffs, former employees of the Village Den restaurant in Manhattan, brought this case alleging violations of federal and state labor laws by the restaurant and its owners, and now move for partial summary judgment with respect to Defendants' liability. For the reasons discussed below, Plaintiffs' motion is granted in part and denied in part.[1]

### I. BACKGROUND

  The Village Den, located at 225 West 12th Street in Manhattan, is owned and operated by Twelfth Street Corp. ("Twelfth Street"), a corporation organized under the laws of the State of Delaware. Pl.'s 56.1 Stmt. ¶ 5. Twelfth Street's annual sales exceed $500,000, which qualifies it as "enterprise engaged in commerce" for the purposes of liability under the Fair Labor Standards Act ("FLSA"). See 29 U.S.C. § 203(s)(1)(A)(ii); see also Bowrin v. Catholic Guardian Society, 417 F.Supp.2d 449, 457 (S.D.N.Y. 2006). On February 16, 2007, Defendant Konstantinos Danalis purchased shares in Twelfth Street. Since then, he has been the majority owner and president of the company, and is by his own admission Plaintiffs' "employer," jointly and severally liable with Twelfth Street for any violations of the FLSA. Def.'s 56.1 Stmt. at ¶¶

---

[1] Plaintiffs also seek to dismiss Defendants K.I.D. Restaurant d/b/a Manatus Restaurant and 181 Restaurant Corp. d/b/a Hudson View Restaurant, because Plaintiffs have determined that they have no claims against those entities. That request is hereby granted.

1

7-8, 10-11; see Moon v. Kwon, 249 F.Supp.2d 201, 237 (S.D.N.Y. 2002) (GEL).[2]

There are four plaintiffs in this litigation.[3] Plaintiff Linda Nicholson ("Nicholson") worked as a waitress at the Village Den from November 2007 to January 2009. Pl.'s 56.1 Stmt ¶ 12. She worked five days a week, eight hours a day, except for those days when she stayed late to cover for other employees, which she alleges happened frequently. Pl's 56.1 Stmt. ¶ 10, 13. The parties agree that Nicholson worked 40 hours per week and received a payroll check for 17 hours of work at $4.65 per hour; Defendants allege that she received additional pay in cash.[4] Def.'s 56.1 Stmt. ¶¶ 16, 34; Def.'s Opp. Br. at 4. Nicholson also received tips from customers. Pl.'s 56.1 Stmt. ¶ 16.

Plaintiff Maria Miranda ("Miranda") worked as a waitress at the Village Den from November 2008 to February 2009. Miranda worked five days per week, starting at 6:00 a.m.; the parties disagree as to whether Miranda's shift ended at 3:00 p.m. or 4:00 p.m. Pl.'s 56.1 Stmt. ¶ 18. Miranda was paid $2.00 per hour throughout her employment at the Village Den, and also received tips from customers. Id. at ¶¶ 19, 34.

Plaintiff Silvia Sanchez ("Sanchez") was employed by the Restaurant as a cashier for a short period of time in December 2008 and January 2009. Id. at ¶ 20. The parties agree that Sanchez worked 51 hours per week and was paid $8.00 per hour.

Jorge Palapa ("Palapa") worked at the Village Den beginning in 2006, first as a busboy and then as a waiter. The parties dispute Palapa's date of hire, although they agree that Palapa was employed at the restaurant when it was purchased by Danalis on February 16, 2007. Def.'s 56.1 Stmt ¶ 24. Palapa was paid $2.00 per hour for the duration of his employment at the Village Den, and also received tips from customers. Id. at ¶¶ 27, 34. He worked up to seven days a week, and his work day spanned twelve hours on Sundays. Id. at ¶ 27.

---

[2] Danalis seeks to limit his liability to the period of time after he purchased a majority share in the restaurant on February 16, 2007. The Court agrees that Danalis should not be held personally liable for violations that occurred before that date.

[3] Although the case is styled as a class action, Plaintiffs have never moved for class certification, nor do they mention any putative class in the briefs filed in support of their motion for summary judgment, which is the first dispositive motion to be filed in this case. The docket entry for the instant motion reflects that the motion was filed on behalf of the four named defendants individually (see Docket No. 30); therefore, this Court presumes that Plaintiffs' motion for partial summary judgment is made only with respect to the four named plaintiffs in the litigation. Claims on behalf of Named Plaintiff Rafael Aguilera were dismissed with prejudice on February 17, 2010, pursuant to a stipulation between the parties.

[4] For the first two weeks of employment, Nicholson was paid $78 in cash per week. Pl's 56.1 Stmt. ¶ 15.

## II.  LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a district court must grant summary judgment if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986).  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all inferences against the moving party.  LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005).  However, "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Scott v. Harris, 550 U.S. 372, 380 (2007).

## III.     DISCUSSION

### A. Minimum Wages Under the FLSA and New York Law

Under the FLSA, employers are required to pay their employees specified minimum wages and overtime. 29 U.S.C. §§ 206, 207.   Pursuant to the statute, if employees ordinarily receive customer tips in the course of their employment, the employer may take a tip credit.  See 29 U.S.C. § 203(m).  To avail itself of the tip credit, an employer must notify employees of the law regarding minimum wages and of the employer's intention to take the tip credit, and must permit employees to retain all tips that they receive.  Chan v. Sung Yue Tung Corp., 2007 WL 313483, *14 (S.D.N.Y. Feb.1, 2007) (GEL); Chung v. New Silver Palace Restaurant, 246 F.Supp.2d 220, 228-29 (S.D.N.Y. 2003) (AKH).  Even where these prerequisites for the tip credit are met, the FLSA requires an employer to pay tipped employees a minimum wage of $2.13 per hour.  See 29 U.S.C. § 203(m).

Plaintiffs Miranda and Palapa were paid $2.00 per hour throughout their employment at the Village Den.  Id. at ¶ 28.  Clearly, this falls under $2.13, the minimum hourly wage for tipped employees.  Nicholson's net hourly wage was also under the required threshold, because she worked 40 hours per week but received a paycheck for only 17 hours of work, at $4.65 per hour.  Spread over a forty-hour week, this amounts to $1.98 per hour.   Plaintiffs allege – and Defendants do not contest – that that the Village Den failed to comply with another requirement of the statute when it failed to notify tipped employees of the statutory requirements related to tip credits.  See Pl. Br. 8.  Plaintiffs argue that yet another violation of the FLSA tip credit provision occurred when Defendants withheld ten percent of credit card tips, because this deprived the

3

waitstaff of the full amount of tips that customers paid. Defendants argue that the deduction was taken to cover fees from credit card companies, but concede that it was improper. Def.'s Br. 5. For these reasons, Defendants are liable for failure to pay federally-required minimum wages to Plaintiffs Nicholson, Miranda, and Palapa.[5]

Defendants have also run afoul of New York law that requires a food service worker to receive a minimum cash wage which, when added to the worker's tips, totals at least the state minimum wage in effect at that time. In 2006, the minimum paid wage for tipped food service workers was $4.35 per hour, for a total hourly wage with tips of $6.75; beginning in 2007, this increased to $4.60 and $7.15, respectively. See 12 N.Y.C.R.R. § 137.1.5. Thus, Defendants are also liable under New York law for failure to pay minimum wages to Defendants Nicholson, Miranda, and Palapa.

### B. Overtime Pay under the FLSA and New York Law

The FLSA requires covered employers to pay non-exempt employees one and a half times the regular rate of pay for all hours in excess of 40 per workweek. 29 U.S.C. § 207(a)(1). New York State imposes the same requirement with respect to premium pay for overtime hours. See 12 N.Y.C.R.R. § 137-1.3. There is no dispute that Plaintiffs Miranda, Sanchez, and Palapa worked in excess of forty hours per week; therefore, this Court finds Defendants liable under both federal and New York state law for failure to pay the required overtime wages to each of these Plaintiffs.

### C. Spread of Hours Compensation Under New York Law

Under New York law, an employee whose workday is longer than ten hours must receive an additional hour's pay "at the basic minimum hourly wage rate," on top of required minimum and overtime wages. 12 N.Y.C.R.R. § 142-2.4; see Liu v. Jen Chu Fashion Corp., 2004 WL 33412, *2, 4 (S.D.N.Y. Jan. 7, 2004) (RJH) (AJP). The parties agree that Palapa worked a twelve-hour shift on Sundays, and Defendants do not claim to have compensated him for spread-of-hours pay. It is therefore uncontroverted that Defendants are liable for failure to pay spread-of-hours compensation to Palapa.

---

[5] Although Defendants appear to concede that "Palapa was paid $2.00 per hour throughout his employment at the Village Den" (see Pl's 56.1 Stmt. ¶ 28; Def.'s 56.1 Stmt. ¶ 28), they contend elsewhere that he was paid $200 for 54 hours of work per week as a busboy, for an hourly wage of $3.70. Def.'s Br. 5. This dispute goes to damages, and does not affect the Court's determination that Defendants are liable with respect to Palapa.

4

### D. Meal Credits Under the FLSA

By law, an employer may claim a meal credit if it is properly documented. See 29 U.S.C. § 203(m). The amount of the credit is limited to the "actual cost to the employer." 29 C.F.R. § 531.3(a); see also 29 C.F.R. § 531.3(b). Moreover, the employer must retain records documenting the out-of-pocket costs that it incurred, 29 C.F.R. § 516.27(a), and bears the burden of proving both the actual costs and their reasonableness. Yu G. Ke v. Saigon Grill, Inc., 595 F.Supp.2d 240, 257 (S.D.N.Y. 2008) (MHD).

Defendants fail to carry that burden. They have proffered no records reflecting the cost of feeding the plaintiffs, and their only evidence of an out-of-pocket cost is their contention that they took a credit of $5.13 per week from employees who were paid by check. See Def's 56.1 Stmt. ¶ 37. Although there remains a factual dispute with regard to how much Defendants charged its employees for meals (see Def.'s 56.1 Stmt. ¶ 37), it is clear that Defendants are liable for taking improper meal credits.

### E. Costs of Laundering Uniforms Under New York Law

Under New York law, an employer who does not launder employee uniforms must pay an additional $5.30 per week to cover laundry costs to any employee who works more than 30 hours per week. 12 N.Y.C.R.R. § 142-2.5(c); Ramirez v. CSJ & Co., 2007 WL 1040363 at *4 (S.D.N.Y. Mar. 6, 2007) (LAK). A uniform is "clothing worn by an employee at the request of an employer that may not be worn as a part of the employee's ordinary wardrobe." Id. The parties agree that Nicholson, Miranda, and Palapa were always subject to certain wardrobe requirements, and that beginning early in 2008, were required to wear black trousers and t-shirts bearing the restaurant logo. Pl.'s 56.1 Stmt. ¶ 39. There is no dispute that these employees were responsible for laundering their own work clothing and were not compensated for the laundry costs, id., but there is disagreement about whether the waitstaff's work wardrobe constituted a "uniform" under the statute. Although it is tempting to conclude—as Judge Kaplan has acknowledged—that a t-shirt bearing the name of a business is "clothing that may be worn as part of an employee's everyday wardrobe," that question should be decided by a trier of fact. See Ramirez, 2007 WL 1040363 at *4. Liability and damages on this claim shall therefore be determined at trial.

5

## IV.  CONCLUSION

For the foregoing reasons, claims against Defendants K.I.D. Restaurant d/b/a Manatus Restaurant and 181 Restaurant Corp. d/b/a Hudson View Restaurant are dismissed with prejudice.  Plaintiffs' motion for partial summary judgment against Defendants Twelfth Street Corp. d/b/a Village Den Restaurant and Konstantinos Danalis is GRANTED with respect to Plaintiffs' claims for minimum wages, overtime premium pay, spread-of-hours compensation, and meal credits.  Summary judgment is DENIED as to Plaintiffs' claim pursuant to 12 N.Y.C.R.R. § 142-2.5(c) for the cost of laundering their uniforms.  A trial as to liability on the laundry claim, and damages as to all claims, shall commence at 9:30 a.m. on Thursday, May 20, 2010.

A settlement conference on the open items set out above will be held in Chambers on Monday, May 10 at 2:30 p.m.  Each party must be present with a person who has full authority to resolve these issues.

SO ORDERED
May __, 2010
New York, New York

U.S.D.J.